UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


DEBRA R. BROWN                         )
                                       )
v.                                     )          No.  3:04-1124
                                       )          JUDGE CAMPBELL
                                       )
UNITED STATES OF AMERICA               )


MEMORANDUM

I.  Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or

Correct Sentence By A Person In Federal Custody (Docket No. 1), filed by the

Movant/Petitioner (hereinafter "Petitioner"), pro se.  The Government has filed a Response and a

Supplemental Response to the Motion (Docket Nos. 6, 13), and the Petitioner has filed a Reply

(Docket No. 15).

The Court has reviewed the pleadings and briefs filed by both parties, the record of

Petitioner's underlying conviction, and the entire record in this case.  For the reasons set forth

below, the Court concludes that Petitioner's Motion is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

The Indictment in the underlying criminal case charged Petitioner with conspiracy to

distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of

21 U.S.C. § 846 (Count One); possession with intent to distribute 50 grams or more of cocaine

base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two); distribution of 50

grams or more of cocaine base to a person under 21 years old, in violation of 21 U.S.C. § 859

(Count Three); and unlawfully employing, using or enticing a person under 18 years of age to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 861 (Count Four). (Docket No. 21 in Case No. 3:02-00086).

Petitioner was initially represented by Assistant Federal Public Defender Jude Lenahan during her initial appearance, and a combined preliminary and detention hearing. (Docket Nos. 4, 8, 11, 12 in Case No. 3:02-00086). After the detention/preliminary hearing, Petitioner obtained retained counsel, Paul Bruno, who was substituted for Mr. Lenahan. (Docket No. 15 in Case No. 3:02-00086). Prior to arraignment on the Indictment, Defendant requested and obtained appointment of a Federal Defender panel member to represent her, who relieved Mr. Bruno. (Docket Nos. 26, 28, 30 in Case No. 3:02-00086).

The Petitioner submitted a Petition To Enter A Guilty Plea (Docket No. 50 in Case No. 3:02-00086), and pled guilty to Count Three. (Docket No. 45 in Case No. 3:02-00086).

The Court subsequently sentenced the Petitioner to a total term of 240 months. (Docket No. 51 in Case No. 3:02-00086). On appeal, the Sixth Circuit affirmed Petitioner's conviction and sentence. (Docket No. 62 in Case No. 3:02-00086); United States v. Brown, 96 Fed.Appx. 380, 2004 WL 954356 (6th Cir. Apr. 29, 2004).

### III. Analysis

#### A. The Petitioner's Claims

Petitioner argues in her Motion that she is entitled to relief based on the following grounds: (1) the prosecutor engaged in misconduct; (2) she received the ineffective assistance of counsel; and (3) her sentence is invalid under Blakely v, Washington, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). (Motion, Docket No. 1).

2

B. <u>The Section 2255 Remedy/Evidentiary Hearing Not Required.</u>

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1]  The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." <u>Reed v. Faley</u>, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); <u>Grant v. United States</u>, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also conducted the trial, he may rely on his recollections of the trial. <u>Blanton v. United States</u>, 94 F.3d 227, 235 (6th Cir. 1996).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255

---

[1]  28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6ᵗʰ Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8ᵗʰ Cir. 1995)).

The Court has reviewed all the files, records, transcripts and correspondence filed in the proceeding underlying Petitioner's conviction, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C.  Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show:  (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6ᵗʰ Cir. 1998).  In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have

4

pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

Where a petitioner demonstrates that his attorney actively represented conflicting interests, however, a court is to presume prejudice. Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 1241-45, 152 L.Ed.2d 291 (2002); Moss v. U.S. , 323 F.3d 443, 445 (6th Cir. 2003). Where the petitioner failed to raise the conflict issue prior to or during trial, he or she must show that (1) an actual conflict existed; and (2) there was an adverse effect on counsel's performance. Id.

Petitioner argues that her initial counsel, Assistant Federal Public Defender Jude Lenahan, provided ineffective assistance at her detention/preliminary hearing because he was unprepared and failed to request an extension of time, and otherwise failed to investigate.

In response, the Government has filed the affidavit of Mr. Lenahan (Docket No. 7), in which he points out that he was appointed to represent the Petitioner on January 3, 2002, and relieved from that representation on January 24, 2002. During this time, Mr. Lenahan states that he represented the Petitioner at the detention/preliminary hearing; advised her as to the estimated guideline sentencing range; and filed an appeal of the Magistrate Judge's detention order on the Petitioner's behalf. (Id.) Mr. Lenahan also explains that the Petitioner continued to cooperate with the Government during his representation, signed a waiver of the thirty-day indictment period, and attended a proffer meeting on January 11, 2002. (Id.) According to Mr. Lenahan, in return for her cooperation, the Government offered to let the Petitioner plead to a twenty-year sentence and would not seek to have her sentence enhanced to thirty-five years. (Id.) Mr.

Lenahan states that he fully advised the Petitioner of the changes against her, possible

defendants, the lack of a basis for a suppression motion, and the applicable guideline sentence.

(Id.)

Petitioner's most specific complaint about Mr. Lenahan is that he should have

interviewed her nephew, Dominic Brown, who was "the person under 21 years of age" to whom

she was alleged to have distributed crack cocaine. Petitioner contends that Mr. Brown would

have confirmed that she wanted to get out of "the deal" which eventually led to Petitioner's

arrest, but agreed to drive him to the place where the deal was to be consummated.

During the preliminary/detention hearing, however, a detective testified that the

Petitioner told this same story shortly after her arrest. (Transcript of Preliminary and Detention

Hearing, at 25, 38 (Docket No. 56 in Case No. 3:02-00086)). Thus, counsel was already aware

of the information Petitioner contends that he would have obtained from Mr. Brown. The Court

also notes that Petitioner repeated a similar version of events at the guilty plea hearing and the

Court determined that the facts she admitted satisfied the essential elements of the crime charged

in Count Three, distributing 50 grams or more of crack cocaine to a person under 21 years of

age. (Transcript of Guilty Plea Hearing, at 44-51 (Docket No. 60 in Case No. 3:02-00086)):

> Q. You're saying that your nephew Dominick and your friend made the deal, that
> your nephew told you to just drop him off and he would do it, that you had
> changed your mind that you didn't want to do the deal but you are admitting that
> you gave the crack cocaine to your nephew?
>
> A. Yes, sir.

(Transcript, at 48). Petitioner later admitted that the amount was over 50 grams (or four ounces).

(Transcript, at 50).

Petitioner does not specify how this information, or any other information counsel could have obtained from Dominic Brown, would have advanced her case at that stage of the proceedings. Thus, Petitioner has not shown that counsel was deficient in failing to interview Mr. Brown.

Petitioner has also failed to specify any other tasks that counsel should have undertaken during his brief representation of her. Accordingly, Petitioner's claim of ineffective assistance of counsel as to Mr. Lenahan is without merit.

As noted above, after the detention/preliminary hearing, Petitioner obtained retained counsel, Paul Bruno, who was substituted for Mr. Lenahan. (Docket No. 15 in Case No. 3:02-00086). Petitioner contends that Mr. Bruno also failed to investigate her case, and interview witnesses. Specifically, Petitioner claims that Mr. Bruno failed to interview Dominic Brown and failed to obtain the grand jury transcript.

In response to this claim, the Government has filed the affidavit of Mr. Bruno (Docket No. 8). Mr. Bruno states that when he took over for Mr. Lenahan, the case was in a "cooperation" posture and the Petitioner had not yet been indicted. (Id., at ¶ 2).[2] According to Mr. Bruno:

> A majority of my time was spent attempting to get the best deal possible for Ms. Brown. I was relieved from further representation very soon after the case was indicted. My investigation included interviewing my client and discussing the facts of the case with Mr. Koshy and the agents. I do not believe that the official

---

[2] Mr. Bruno explained that because the Government suggested that it would indict the Petitioner on additional charges if she did not plead guilty to a proposed information, he requested that the Petitioner sign waivers of indictment during this period to avoid her indictment on these additional charges before all plea negotiations were completed. (Id., at ¶ 10).

7

discovery process had begun prior to my being relieved.

(Id.)

Other than the allegation as to Dominic Brown, the Petitioner has not suggested what information Mr. Bruno would have learned from interviews with witnesses, a review of the grand jury transcript, or otherwise investigative avenues that would have advanced her case. As for the Dominic Brown issue, as explained above, the information Petitioner alleges that Mr. Bruno would have learned from Mr. Brown is the same information that was disclosed in the preliminary/detention hearing, and was ultimately confirmed by the Petitioner in her guilty plea hearing. Petitioner has not demonstrated that she was prejudiced by the alleged failure by Mr. Bruno to obtain the information Mr. Brown allegedly possessed. Thus, Petitioner has failed to demonstrate that Mr. Bruno was ineffective in his investigation of her case.

Petitioner also claims that Mr. Bruno had a conflict of interest, which she explains as follows:

> . . . Counsel Paul Bruno was retained by Defendant's boyfriend Terry Everson upon the advice of Nicky Airs, Defendant Debra R. Brown's Supplier of the drug of the charge. Nicky Airs also paid for the representation of Paul Bruno through Terry Everson.
>
> * * *
>
> The Government was going to give me a 5K1 if I would have someone do a drug bust. I had informed Counsel Paul Bruno that my sister Cherry Brown was willing to do it. Counsel Paul Bruno called my sister Cherry Brown and left a message with the Defendant Debra R. Brown's boyfriend Terry Everson that Defendant Debra R. Brown's sister Cherry Brown was going to help Defendant Debra R. Brown by doing some work for Debra R. Brown. Paul Bruno had been trying to get ahold of Defendant's sister Cherry Brown but to no avail for Defendant's sister Cherry Brown's phone had been disconnected. Counsel Paul Bruno took to (sic) liberty to call a cell phone of Terry Everson's to get the message relayed to Defendant's sister Cherry Brown. Defendant's sister Cherry

8

Brown was then scared for her life to do a drug deal for the government for she feared for her life. The government wanted her to set up Nicky Airs, but they would let her set up anyone for the Defendant Debra R. Brown a 5K1 (sic).

(Memorandum, attached to Docket No. 1).

Regarding this allegation, Mr. Bruno states that he received the initial contact regarding the Petitioner's representation from Terry Everson. (Id., at ¶ 1). Mr. Everson told Mr. Bruno that he wanted Mr. Bruno to represent his girlfriend (the Petitioner), and Mr. Bruno told Mr. Everson that he would have to meet with Petitioner for her to approve his representation. (Id.) According to Mr. Bruno, Terry Everson paid a portion of the fee, and the Petitioner approved the representation after a meeting with Mr. Bruno. (Id.) Mr. Bruno goes on to state:

> At no time did Terry Everson indicate that the money came from anyone but him. In addition, at the time I was retained to handle the case, I had never heard of Nakeith Ayers and had no idea who he was. I was informed by Ms. Brown after already representing her for a period of time that the true source of the money may have been Nakieth Ayers. However, this information never affected my representation of Ms. Brown.

(Id., at ¶ 9).

As for the alleged phone call to Mr. Everson, Mr. Bruno states:

> I do not recall ever telling Terry Everson that Cherry Brown may cooperate on behalf of her sister as alleged by Ms. Brown. I may have informed him that I needed to get in touch with Cherry Brown knowing that he would know where she was. I needed to find Cherry Brown in order to determine if she would be willing to help her sister.

(Id., at ¶ 12).

Petitioner does not state how she knows that Mr. Airs paid part of Mr. Bruno's fee, nor does she state the basis for her belief that Mr. Bruno knew of Mr. Airs alleged payment. Petitioner's allegations regarding the conflict issue are speculative and conclusory, and are

9

simply insufficient to warrant a hearing on the conflict issue.  In addition, Petitioner has not

provided an affidavit or any other proof to support her allegation that her sister, Cherry Brown,

would have assisted the Government in arranging a drug deal with Mr. Airs but for Mr. Bruno's

alleged disclosure to Mr. Everson. Moreover, according to Petitioner's own statement, Mr.

Bruno allegedly told Mr. Everson that Cherry Brown was "going to help [the Petitioner] by

doing some work" for her. She does not allege that Mr. Bruno stated what the "work" entailed.

Petitioner also fails to explain why Mr. Bruno's alleged message prevented Cherry Brown from

cooperating when the Government, according to Petitioner, would have allowed her to "set up

anyone," not just Nicky Airs.

Thus, the Court concludes that Petitioner's ineffective assistance claim regarding Mr.

Bruno's alleged conflict is without merit, as she has failed to sufficiently allege that Mr. Bruno

"actively represented conflicting interests," Mickens, 323 F.3d at 455.

Next, Petitioner claims that her counsel[3] was ineffective for failing to negotiate a plea to

Count Four instead of Count Three as her sentence would have been reduced.  Petitioner argues

that the applicable sentence for a violation of 21 U.S.C. § 861 (Count Four) is five years, while

the sentence for a violation of 21 U.S.C. § 859 (Count Three) is twenty years to life.  A review of

the these statutes, however, does not support Petitioner's interpretation.  Section 861 authorizes a

sentence of up to twice the maximum otherwise authorized under the drug trafficking statutes. 21

U.S.C. § 861(b), (c).  A person with a prior drug conviction who is alleged to have dealt in over

50 grams of cocaine base under this statute faces a mandatory minimum sentence of twenty

---

[3]  Petitioner does not specify which of her lawyers was responsible for this alleged error.

10

years.[4]  The same sentence applies to Section 859, the statute under which Petitioner pled guilty.

Therefore, a plea of guilty to Count Four would not have resulted in a reduced sentence, and

counsel was not ineffective for failing to craft such a plea agreement.

Finally, Petitioner argues that counsel was ineffective for failing to object to the

Government's failure to make a substantial assistance motion, in light of her cooperation and the

information she shared with law enforcement authorities about an unrelated homicide.  Without a

plea agreement, review of the Government's decision not to file a motion for substantial

assistance is limited to whether the decision was driven by an unconstitutional motivation.

United States v. Wade, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992).  Where a

substantial assistance motion is the subject of a plea agreement, however, courts have required

the Government to act in good faith is complying with the agreement. United States v. Issac, 141

F.3d 477, 481-84 (3rd Cir. 1998); United States v. Clay, 106 F.3d 402 (Table), 1996 WL 742308

(6th Cir. Dec. 23, 1996).

Petitioner has not alleged an unconstitutional motive on the part of the Government.

Petitioner's plea agreement, however, does address the possibility of the filing of a substantial

assistance motion.  Paragraph 14 of the letter attached to the Plea Agreement states:

> If the defendant or a third party provides significant proactive cooperation
> relating to the defendant's supplier or other significant targets, as determined
> solely in the discretion of this office, the government agrees to file a motion for
> downward departure pursuant to U.S.S.G. 5K1.1 or 18 U.S.C. §3553(e) or Fed. R.
> Crim. P. 35 or to file a motion to strike the enhancement information (the decision
> as to which, if any, of these actions to take shall also be within the sole discretion
> of this office), stating the extent to which the defendant has provided substantial

---

[4]   A five-year term of imprisonment is mentioned in Section 861, but it is a term that is
*added* to the main sentence for certain described conduct. 21 U.S.C. § 861(d).

assistance in the investigation and/or prosecution of other person(s) who has/have committed an offense, provided the defendant and any third party cooperator continues to fully and truthfully cooperate and provide substantial assistance. The determination of whether the defendant qualifies for the filing of any such motion shall be in the sole discretion of the United States.

(Docket No. 50 in Case No. 3: 02-00086).

The Government has filed the affidavit of Detective Marti Roberts who participated in two to three interviews with the Petitioner and her attorney after her arrest. (Docket No. 9).

Detective Roberts states:

> Some of the interviews that were conducted involved information Brown provided about her involvement associated with her arrest. The information Brown provided could not be acted upon. Brown also provided information about a murder that took place inside her residence.

(Id.)

In his affidavit, Assistant United States Attorney Sunny Koshy, describes a proffer session held on January 11, 2002 in which Petitioner discussed the unrelated murder investigation:

> This proffer was focused on an effort to aid Det. [Danny] Satterfield's investigation of a murder which apparently occurred at the defendant's home. The victim was shot to death, but the defendant claimed to have been sound asleep and that she only learned of the murder when someone else woke her up and showed her the body which was then outside in the alley. The government did not view the proffer as being of substantial assistance.

(Docket No. 14, at ¶ 1D). As for other cooperation, Mr. Koshy states: "The defendant stated a desire to cooperate against others and I was notified by Mr. Bruno and later by her in a letter that the defendant was attempting to cooperate based on third parties' assistance. However, no one actually provided that cooperation." (Id., at ¶ 1G).

Petitioner does not describe the information she provided to the Government that she

12

alleges was substantial. She simply states that she was "cooperative and forthcoming" about drug trafficking in the Nashville area, and told the Government all she knew about the homicide investigation. Indeed, in another section of her Motion, Petitioner states that she "had no knowledge of these murders." Without more specific details indicating that Petitioner's assistance was arguably "substantial," the Court cannot conclude that the Government's failure to file a substantial assistance motion was in bad faith.

Accordingly, as such an argument would have been meritless, the Court concludes that counsel was not ineffective for failing to object to the Government's refusal to file a substantial assistance motion. See, e.g., Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998)(Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

As Petitioner has not demonstrated that her attorneys provided defective assistance, her claims of ineffective assistance of counsel are without merit.

D. Prosecutorial Misconduct/Invalid Guilty Plea

Petitioner claims that the prosecutor assigned to this case, AUSA Koshy, threatened to jail her five minor children during a proffer session on March 6, 2002.

In response to this allegation, the Government has filed the affidavits of AUSA Koshy, Detective Roberts, Attorney Paul Bruno, and Attorney David R. Heroux, who was assisting Mr. Bruno and attended the proffer session. Attorney Bruno states in his affidavit that he wrote in his proffer notes: "Threaten to prosecute kids." (Docket No. 8, ¶ 3). Mr. Bruno further states:

> He did threaten to prosecute her children if she was not forthcoming with him.
> Following Mr. Koshy's threatening to prosecute Ms. Brown's children, I had a
> conversation with him in which he said that he was not serious about prosecuting

13

the children, but that he was trying to get her to be truthful with him. I did not bring this to the Court's attention as I did not think it was necessary to do such and I did want to keep open the cooperation possibilities.

(Id.)

Mr. Heroux states in his affidavit that after the Petitioner indicated that she had no information about an alleged homicide, AUSA Koshy "threatened to charge the defendant's children and have her children locked up." (Docket No. 10, at ¶¶ 4-8).

In his affidavit, Detective Roberts states that "[a]t each interview, AUSA Sunny Koshy was present as well as myself and I do not recall any threats made to Brown involving the arrest of her children." (Docket No. 9).

Mr. Koshy states, in his affidavit, that he has "no memory of any such statement even though I have reviewed Mr. Bruno's and Mr. Heroux's affidavits which state that I made such a statement during the March 6, 2002 proffer session." (Docket No. 14). Mr. Koshy further states:

> . . . I am sure I did not threaten to prosecute any of the defendant's children for any crimes related to the charges against the defendant. Specifically, I am sure I did not threaten to charge any of her children with drug trafficking offenses since I am unaware of any evidence which implicated the children in such offenses.
>
> B. I believe the portion of the note Mr. Bruno wrote which states 'Threaten to prosecute kids' may actually refer to my discussion with the defendant during that proffer where I believe I would have expressed strong concern about whether I should contact child services since it appeared the defendant's children may have been endangered based on her version of being so sound asleep that she did not even wake up with gunshots in her house, and with other people involved in drug dealing being at that house with her children while she was so sound asleep. I did not actually take any action to investigate or prosecute any of the defendant's children, and did not request a child services investigation. The other possibility is that I could have told the defendant that the people inside the house at the time of the murder (including children) could be subpoenaed to testify in the future, and that testifying falsely could lead to a prosecution.

(Id.)

14

Mr. Koshy goes on to state that the defendant sent him three letters, none of which mentioned any fear of criminal charges being brought against her children; that neither she nor her counsel raised the issue during plea negotiations; and that she failed to mention any threats in a letter she wrote to the Court or during the plea hearing. (Id.)

Although the federal courts have held that a plea agreement could be rendered invalid if the defendant was coerced into agreeing to its terms by government threats to prosecute a third party without cause, see, e.g., United States v. Marquez, 909 F.2d 738, 741 (2d Cir.1990), the Petitioner has not shown that the alleged threat in this case had any effect on her decision to plead guilty several month later.[5]  At the guilty plea hearing, the Court asked the Petitioner whether she was feeling any pressure to plead guilty:

[The Court]:  Ms. Brown, has anybody forced you to plead guilty?

A.  No, sir.

Q.  Has anybody threatened you?

A.  No, sir.

Q.  Has anybody put any pressure on you to make you plead guilty?

A.  Not really.

Q.  All right.  Tell me what you mean by not really.

A.  I mean nobody put no pressure on me but I have been told that I – I will be better off if I plead guilty.

---

[5]   The evidence indicates that the goal of the prosecutor in making the alleged threat may have been to obtain the Petitioner's cooperation in disclosing information about the charged crime or other crimes.  If so, Petitioner is not now claiming that she would have kept silent absent the threat.  Indeed, Petitioner claims that her cooperation was voluntary and deserving of a reduced sentence.

15

Q. Are you referring to a conversation with your lawyer and the government or are you talking about somebody else telling you that?

A. No, my lawyer.

Q. Other than your determination and your lawyer's determination as you understand it that you may be better off pleading guilty, has anybody put any pressure on you or forced you in any way to plead guilty?

A. No, sir.

(Guilty Plea Transcript, at 30-31). Petitioner did not otherwise suggest during the hearing that she was entering the plea agreement because she feared prosecution of her children. See United States v. Mader, 251 F.3d 1099, 1107 n.8 (6th Cir. 2001)(Petitioner presented no evidence that prosecution's threat to indict his wife would have been unjustified, nor did petitioner indicate during the plea hearing that he had been threatened or pressured to enter a guilty plea).

At the sentencing hearing, Petitioner expressed remorse, stated that she took responsibility for her actions, and thanked the Court for given her the opportunity to speak. (Transcript of Sentencing Hearing, at 5-6 (Docket No. 61)). She mentioned nothing about entering the plea agreement under duress, nor did she suggest that she wanted to withdraw her guilty plea.[6]

Thus, Petitioner's allegation of prosecutorial misconduct does not render her guilty plea invalid. Accordingly, as Petitioner has not demonstrated how any such threat otherwise prejudiced her case, the Court finds this issue to be without merit.

---

[6] Interestingly, Petitioner argued on appeal that her guilty plea was improperly coerced by the government's suggestion that it might obtain a superseding indictment if she did not. United States v. Brown, 96 Fed.Appx. at 382-83. She did not contend that a threat to her children coerced the guilty plea.

16

E.  Blakely/Booker Claim

Petitioner argues that her sentence violates the Supreme Court's decisions in Blakely v. Washington, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004) and United States v. Booker, 125 S.Ct. 738, 2005 WL 50108 (Jan. 12, 2005) because the sentence enhancements imposed by the Court were not found by a jury beyond a reasonable doubt.

The federal courts have hold, however, that neither Blakely, nor Booker, are retroactively applicable to cases on collateral review. See, e.g., In re Dean, 375 F.3d 1287, 1290 (11th Cir.2004)(Blakely decision not applied retroactively to cases on collateral review); Spiridigliozzi v. U.S., 117 Fed.Appx. 385, 394, 2004 WL 2671719, **9 (6th Cir. Nov. 15, 2004)(same).  See also  Humphress v. U.S., 398 F.3d 855 (6th Cir. 2005)(Booker decision not applied retroactively to cases on collateral review); Bey v. U.S., 399 F.3d 1266 (10th Cir. 2005)(same); Varela v. U.S., 400 F.3d 864 (11th Cir. Feb. 17, 2005)(same); Green v. U.S., 397 F.3d 101 (2nd Cir. 2005)(same); McReynolds v. U.S., 397 F.3d 479 (7th Cir. 2005)(same).  Thus, this claim is without merit.


IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial

17

of a constitutional right. <u>Castro v. United States</u>, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

18